**BEFORE THE**
**UNITED STATES COURT OF INTERNATIONAL TRADE**

| | | |
|---|---|---|
| UNITED STATES STEEL CORPORATION, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Court No.  20-03815 |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| *Defendant*. | ) | |

**<u>COMPLAINT</u>**

Pursuant to Rule 3(a)(2) of the Rules of the United States Court of International Trade,

Plaintiff, United States Steel Corporation ("Plaintiff" or "U. S. Steel"), by and through its

attorneys, alleges herein as follows.

**<u>ADMINISTRATIVE DETERMINATION TO BE REVIEWED</u>**

1.  U. S. Steel contests certain aspects of the final results of the second administrative review

of the antidumping duty order covering Certain Hot-Rolled Steel Flat Products from Australia,

issued by the U.S. Department of Commerce ("Commerce") that were published in the *Federal*

*Register* on October 7, 2020.  *See Certain Hot-Rolled Steel Flat Products from Australia: Final*

*Results of Antidumping Duty Administrative Review; 2017-2018*, 85 Fed. Reg. 63,249 (Oct. 7,

2020) ("*Final Results*").

**<u>JURISDICTION</u>**

2.  This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1581(c) because

this action is commenced under 19 U.S.C. § 1516a(a)(2)(B)(iii).

**TIMELINESS OF ACTION**

3.   U. S. Steel commenced this action by timely filing a Summons with this Court on October 30, 2020, which is considered to be within 30 days after the October 7, 2020 publication of the *Final Results*, in accordance with United States Court of International Trade Rule 6(a)(1)(C).  This complaint is being filed simultaneous with the Summons, and therefore is timely in accordance with 28 U.S.C. § 2636(c) and within the time limits specified in 19 U.S.C. § 1516a(a)(2)(A) and United States Court of International Trade Rule 3(a)(2).

**STANDING**

4.   U. S. Steel is a domestic producer of hot-rolled steel flat products, which is the domestic like product to the subject merchandise.  U. S. Steel participated in the contested antidumping administrative review by filing comments and briefs and was a petitioner in Commerce's underlying antidumping duty investigation.  Accordingly, U. S. Steel is an interested party within the meaning of 19 U.S.C. § 1677(9)(C) and has standing to commence this action pursuant to 28 U.S.C. § 2631(c) and 19 U.S.C. § 1516a(d).

**PROCEDURAL HISTORY**

5.   As a result of affirmative findings of dumping that caused material injury to the domestic industry producing hot-rolled steel flat-products, Commerce published an antidumping duty order covering hot-rolled steel flat-products from Australia in the *Federal Register* on October 3, 2016.  *See Certain Hot-Rolled Steel Flat Products From Australia, Brazil, Japan, the Republic of Korea, the Netherlands, the Republic of Turkey, and the United Kingdom: Amended Final Affirmative Antidumping Determinations for Australia, the Republic of Korea, and the Republic of Turkey and Antidumping Duty Orders*, 81 Fed. Reg. 67,962 (Oct. 3, 2016).

6.   On December 11, 2018, Commerce initiated its second administrative review of the antidumping duty order. *See Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 83 Fed. Reg. 63,615 (Dec. 11, 2018) ("Notice of Initiation").   The period of review spanned from October 1, 2017 through September 30, 2018. *See id*.   Commerce selected BlueScope Steel (AIS) Pty Ltd, BlueScope Steel Ltd., and BlueScope Steel Distribution Pty Ltd. (collectively, "BlueScope") as the mandatory respondent in the review.   *See Certain Hot-Rolled Steel Flat Products from Australia: Preliminary Results of Antidumping Duty Administrative Review; 2017-2018*, 84 Fed. Reg. 68,876 (Dec. 17, 2019) ("*Preliminary Results*").

7.   On February 11, 2019, BlueScope filed its response to Commerce's initial section A questionnaire.  *See* Letter from BlueScope to Commerce, *Blue Scope Steel's Section A Questionnaire Response*, dated February 11, 2019.  On February 25, 2019, U. S. Steel filed rebuttal factual information and deficiency comments requesting that Commerce ask BlueScope to provide additional information relating to its transfer pricing formula for BlueScope's sales of Australian hot-rolled steel to its affiliated U.S. importer and to report invoice transfer prices with calculation worksheets demonstrating its application of the pricing formula.  *See* Letter from U. S. Steel to Commerce, *U. S. Steel's Comments Concerning BlueScope's Section A Questionnaire Response; Submission of Rebuttal Factual Information*, dated February 25, 2019 at 9-10.

8.   On March 22, 2019, Commerce issued BlueScope a supplemental section A questionnaire.  Among other questions, Commerce requested BlueScope clarify its internal transfer pricing methodology.  Commerce also requested that BlueScope provide a copy of its agreement with its U.S. affiliate Steelscape.  Commerce requested that BlueScope demonstrate how its transfer price formula works and to reconcile its invoice prices with the transfer price generated from the transfer price formula.  *See* Letter from Commerce to BlueScope,

*Supplemental Section A Questionnaire*, dated March 22, 2019 at Question 17(a)-(k).  BlueScope

filed its response to Commerce's supplemental section A on April 8, 2019.  *See* Letter from

BlueScope, B*lueScope Steel's Response to the Department's 1ˢᵗ Supplemental Section A*

*Questionnaire*, dated April 8, 2019.

    9.   In its Pre-Preliminary Comments, U. S. Steel explained that BlueScope's transfer pricing

formula and associated documents actually operated to reimburse antidumping duties.

Specifically, the Australian producer, BlueScope Steel (AIS) Pty Ltd. ("AIS") reimbursed

antidumping duties owed by its U.S. affiliated importer, BlueScope Steel Americas LLC

("BSA.").  *See* Letter from U. S. Steel to Commerce, *U. S. Steel's Pre-Preliminary Comments*

*Concerning BlueScope*, dated November 19, 2019 at 14-16.  As such, U. S. Steel requested that

Commerce adjust BlueScope's entered value to account for the reimbursement thereby

eliminating the effect of reimbursement on U.S. price in its calculation.  *See id*.

    10. Despite U. S. Steel's very credible and supported allegation demonstrating

reimbursement was occurring, Commerce declined to find reimbursement in its December 17,

2019 *Preliminary Results*.  *See Preliminary Results*, Preliminary Decision Memorandum at 12

("PDM").  Commerce dismissed U. S. Steel's argument stating, "Based on our preliminary

analysis, we find that the record does not demonstrate that BlueScope reimbursed its U.S.

affiliate."  *Preliminary Results*, PDM at 12.  Commerce based its conclusion on its finding that

"there is nowhere on the record that demonstrates a payment from BlueScope to BSA for

antidumping duties, to support the notion that BlueScope reimbursed its affiliate."  Commerce

Memorandum to the File, *Preliminary Results Analysis Memorandum for BlueScope Steel (AIS)*

*Pty Ltd, BlueScope Steel Limited, and BlueScope Steel Distribution*, dated December 10, 2019 at

7.

11. Although Commerce found reimbursement was not occurring, Commerce nevertheless issued BlueScope a post-preliminary supplemental questionnaire seeking further information on BlueScope's transfer pricing methodology. *See* Letter from Commerce to BlueScope, *Post-Prelim Supplemental Questionnaire*, dated January 27, 2020 at questions 3-4. On February 18, 2020, BlueScope submitted its response including additional transfer price worksheets and documentation. *See* Letter from BlueScope to Commerce, *Response of BlueScope Steel Ltd. to the Department's Post-Preliminary Supplementary Questionnaire* dated February 18, 2020.

12. In its administrative case brief, Petitioners, including U. S. Steel, explained that BlueScope's reimbursement of antidumping duties did not take the form of a direct payment to BSA as Commerce appeared to require in the *Preliminary Results*, but rather that AIS reimburses BSA by lowering the price charged to BSA for the internally-transferred hot-rolled steel coil in the amount of the antidumping duties that BSA owed to the United States Treasury on each entry of the subject merchandise. *See* Letter from Petitioners to Commerce, *Petitioners' Case Brief*, dated March 11, 2020 at 7 ("Petitioners' Case Brief"). Using record documentation submitted by BlueScope in its initial questionnaire response and the two supplements thereto, Petitioners detailed the manner in which reimbursement occurs – AIS's transfer price to BSA is reduced by the amount of duty otherwise due. *See* Petitioners' Case Brief at 4-9. Petitioners stressed the impact reimbursement has on the efficacy of the United States trade remedy laws and how to adjust BlueScope's prices to eliminate the reimbursement of dumping duties. *See* Petitioners' Case Brief at 9.

13. In the *Final Results*, Commerce concluded, against the weight of the evidence, that BlueScope did not reimburse its U.S. affiliate BSA for AD duties. Commerce reasoned that "BSA paid AD duties on its imports of subject merchandise, and it passed these duties on to

Steelscape as part of the transfer price charged {sic} to it." *Final Results*, Issues and Decision Memorandum at 8 ("IDM"). As a result, Commerce did not adjust its calculation to eliminate the effect of reimbursement on BlueScope's entered value. Commerce's determination undermines the efficacy of the antidumping duty order and its associated cash deposits. In so doing, Commerce calculated an antidumping duty margin for BlueScope of 2.72 percent, which embraced this reimbursement scheme. *See Final Results*, 85 Fed. Reg. at 63,250.

14. U. S. Steel appeals Commerce's *Final Results* of the second administrative review.

## CLAIMS

### Count 1

15. Paragraphs 1 through 14 of this Complaint are incorporated herein by reference.

16. In supporting its decisions with substantial evidence as required, 19 U.S.C. § 1516a(b)(1)(B)(i), Commerce is under an obligation to address the relevant arguments of the parties. *See* 19 U.S.C. § 1677f(i)(3). U. S. Steel identified the reimbursement scheme as taking place in the first step of BlueScope's U.S. sales process — between AIS and BSA. U. S. Steel asserted reimbursement in the form of the reduction of the transfer price from AIS to BSA by the amount of the antidumping duty otherwise due. This scheme effectively shifted the burden of paying the duty onto AIS (as the Australian producer) rather than BSA (as the U.S. importer). The elimination of duties owed through reimbursement was passed along through the transaction by BSA to Steelscape.

17. Insofar as Commerce only addressed whether BSA payed import duties upon importation and whether Steelscape was invoiced for those duties, *see Final Results*, IDM at 8, Commerce failed to consider relevant record evidence, address the specific transaction constituting reimbursement, and consider Petitioners' arguments. By not engaging with the record and

Petitioners' arguments that reimbursement of antidumping duties occurred when AIS lowered its transfer price to BSA by the amount of the duty, Commerce failed to support its conclusion with substantial evidence.  Commerce failed to consider record evidence that reasonably detracts from its conclusion and failed to provide a reasoned explanation that reimbursement was not occurring between AIS and BSA.

<u>Count 2</u>

18. Paragraphs 1 through 17 of this Complaint are incorporated herein by reference.

19. Commerce's rules provide for it to "deduct the amount of any antidumping duty or countervailing duty which the exporter or producer: paid directly on behalf of the importer; or reimbursed by the importer."  19 C.F.R. § 351.402(f).  The record of the underlying review reveals that the producer (AIS) relieved the importer (BSA) of its obligation to pay antidumping duties in addition to the U.S. transfer price by preemptively discounting the price charged to BSA.  In doing so, AIS incurred the duty payment as opposed to BSA.  Commerce's rules require Commerce to make an adjustment to U.S. price to eliminate the impact of such reimbursement in the margin calculation.  Insofar as Commerce declined to find reimbursement and failed to adjust its calculation accordingly, its decision is not in accordance with the law.

**REQUEST FOR JUDGEMENT AND RELIEF**

WHEREFORE, U. S. Steel respectfully request that this Court:

20. Hold that the portions of Commerce's *Final Results* that are complained of above are not supported by substantial evidence and are otherwise not in accordance with law;

21. Remand this matter to Commerce for disposition consistent with the final opinion and order of the Court; and

22. Grant such further relief as this Court deems just and proper.

Respectfully submitted,

/s/ Thomas M. Beline

Thomas M. Beline
Yohai Baisburd
Sarah E. Shulman
**CASSIDY LEVY KENT (USA) LLP**
900 19th Street, NW, Suite 400
Washington, D.C. 20006
Phone:  (202) 567-2300
Fax:  (202) 567-2301
Email: tbeline@cassidylevy.com

*Counsel to United States Steel Corporation*

Dated:  October 30, 2020