**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE:  THE HONORABLE RICHARD K. EATON, SENIOR JUDGE**

| | |
|---|---|
| UNITED STATES STEEL CORPORATION,<br>    *Plaintiff,*<br><br>NUCOR CORPORATION,<br>    *Consolidated Plaintiff,*<br><br>    v.<br><br>UNITED STATES,<br>    *Defendant,*<br><br>BLUESCOPE STEEL LTD., BLUESCOPE STEEL<br>(AIS) PTY LTD., AND BLUESCOPE STEEL<br>AMERICAS INC.,<br>    *Defendant-Intervenors.* | Court No. 20-03815<br><br>**PUBLIC VERSION**<br>Business Proprietary Information<br>Removed from Brackets on Page<br>13 |

<u>**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF THE RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD**</u>

Alan H. Price
Christopher B. Weld

WILEY REIN LLP
1776 K Street, NW
Washington, DC 20006
(202) 719-7000

*Counsel to Nucor Corporation*


Thomas M. Beline
Yohai Baisburd
Sarah E. Shulman

CASSIDY LEVY KENT (USA) LLP
900 19th Street, N.W.
Suite 400
Washington, D.C. 20006
 (202) 567-2300

*Counsel to United States Steel Corporation*

July 13, 2021

PUBLIC VERSION

**<u>Table of Contents</u>**

<u>Page</u>

I.    Argument ....................................................................................................................4

     A.    Commerce's Long-Standing Rule to Combat Indirect Reimbursement Has
          Been Unwavering and the Facts Here Support Its Application .............................5

          1.    Commerce's Regulatory Changes Since 1980 Do Not Establish an
               Intent to No Longer Correct For Indirect Reimbursement .........................5

          2.    Reimbursement in BlueScope's Case Is Not Based on a Below-
               Cost Transfer Price, But Evidence of a Direct Link to Duty Rates ..........10

          3.    Plaintiffs Do Not Advocate a Broad Reading of the Regulation;
               Rather, Plaintiffs Advocate that the Regulation Should be Used as
               Intended...................................................................................................12

     B.    Post-Importation Activities Have Nothing to Do With Whether Indirect
          Reimbursement Occurred at the Time of Importation ...........................................13

II.   Conclusion ...............................................................................................................16

**PUBLIC VERSION**

Table of Authorities

Page(s)

Regulations

19 C.F.R. § 351.402(f) ...................................................................................4, 12

Court Decisions

*Abbott Labs. v. United States*, 573 F.3d 1327 (Fed. Cir. 2009) ......................................6

*Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204 (1988) ..............................................6

*Br. Steel PLC v. United States*, 127 F.3d 1471 (Fed. Cir. 1997) ......................................7

*NMB Sing. Ltd v. United States*, 557 F.3d 1316 (Fed. Cir. 2009) ...................................7

*Ranchers-Cattlemen Action Legal Foundation v. United States*, 74 F.
Supp. 2d 1353 (Ct. Int'l Trade 1999) ........................................................................8

*Save Domestic Oil, Inc. v. United States*, 357 F.3d 1278 (Fed. Cir. 2004) ....................7

*Shandong Huarong Mach. Co. v. United States*, 435 F. Supp. 2d 1261
(Ct. Int'l Trade 2006) .................................................................................................8

*Torrington Co. v. United States*, 881 F. Supp. 622 (Ct. Int'l Trade 1995) ......................2-3, 10-12

Administrative Determinations

*Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts
Thereof from France, Germany, Italy, Japan, Romania, Singapore,
Sweden and the United Kingdom; Final Results of Antidumping Duty
Administrative Reviews*, 62 Fed. Reg. 54,043 (Oct. 17, 1997) ............................................. *passim*

*Certain Cut-to-Length Carbon Steel Plate from Sweden: Final
Results of Antidumping Duty Administrative Review*, 62 Fed. Reg.
18,396 (Apr. 15, 1997) ..............................................................................................9

*Certain Hot-Rolled Steel Flat Products from Australia: Final
Results of Antidumping Duty Administrative Review; 2017-2018*,
85 Fed. Reg. 63,249 (Oct. 7, 2020) ......................................................................... 1-2, 6

PUBLIC VERSION

*Certain Frozen Fish Fillets From the Socialist Republic of Vietnam:*
*Final Results of the Second Administrative Review*, 72 Fed. Reg.
13,242 (Mar. 12, 2007) ................................................................................................9

*Certain Frozen Warmwater Shrimp From the People's Republic of*
*China: Final Results of Administrative Review; 2011-2012*, 78 Fed.
Reg. 56,209 (Sept. 12, 2013) .......................................................................................8

*Honey from the People's Republic of China: Final Results and Final*
*Rescission, In Part, of Antidumping Duty Administrative Review*,
70 Fed. Reg. 38,873 (July 6, 2005)............................................................................10

*Porcelain-on-Steel Cookware from Mexico: Final Results of*
*Antidumping Duty Administrative Review*, 65 Fed. Reg. 30,068 (May 10,
2000) ..................................................................................................................7, 9, 14

*Solid Urea from the Russian Federation: Final Results of*
*Antidumping Duty Administrative Review*, 75 Fed. Reg. 51,440
(Aug. 20, 2010) ............................................................................................................9

*Stainless Steel Sheet and Strip From Taiwan; Final Results and*
*Partial Rescission of Antidumping Duty Administrative Review*,
67 Fed. Reg. 6,682 (Feb. 13, 2002) .............................................................................9

*Structural Steel Beams From the Republic of Korea; Final Results of*
*Antidumping Duty Administrative Review*, 68 Fed. Reg. 2,499
(Jan. 17, 2003)..............................................................................................................9

*Welded Line Pipe from the Republic of Korea: Final Results of*
*Antidumping Duty Administrative Review; 2015-2016*, 83 Fed. Reg.
33,919 (July 18, 2018) .................................................................................................8

Other Administrative Materials

*Antidumping Duties*, 45 Fed. Reg. 81,82 (Feb. 6, 1980) .........................................5, 12

*Antidumping Duties; Countervailing Duties; Final Rule*, 62 Fed. Reg.
27,296 (May 19, 1997)................................................................................................12

PUBLIC VERSION

This reply brief is submitted by plaintiff, United States Steel Corporation ("U. S. Steel") and plaintiff-intervenor, Nucor Corporation ("Nucor") (collectively, "Plaintiffs"), to respond to the briefs filed by defendant, the United States,[1] and defendant-intervenors, BlueScope Steel Ltd., BlueScope Steel (AIS) Pty Ltd., and BlueScope Steel Americas Inc. (collectively, "BlueScope"),[2] concerning U. S. Steel's challenge to the final results of the administrative review concerning the antidumping duty order on imports of hot-rolled steel flat products from Australia. *See Certain Hot-Rolled Steel Flat Products from Australia: Final Results of Antidumping Duty Administrative Review; 2017-2018*, 85 Fed. Reg. 63,249 (Oct. 7, 2020).[3]

This appeal is about indirect reimbursement; not transfer prices, INCOTERMS, or post-importation cash flows. The Court should not be distracted from the main argument in this appeal, which is a rather straightforward application of Commerce's regulations to the manner in which BlueScope imports hot-rolled steel covered by an antidumping duty order. Commerce has previously defined indirect reimbursement as "the exporter lower{ing} the amount invoiced to the importer . . . for antidumping duties to be assessed." *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof from France, Germany, Italy, Japan, Romania, Singapore, Sweden and the United Kingdom; Final Results of Antidumping Duty Administrative Reviews*, 62 Fed. Reg. 54,043 (Oct. 17, 1997) ("*AFBs*"), IDM at Section 13, Comment 1. The record below establishes, and both Commerce and defendant-intervenors implicitly concede that

---

[1] Brief of United States in Response to Plaintiffs' Motion for Judgment Upon the Agency Record, Ct. No. 20-3815, ECF No. 36 (citation to the brief take the form "USG Response Br. at __").

[2] Response Brief of BlueScope Steel Ltd., BlueScope Steel (AIS) Pty Ltd. and BlueScope Steel Americas, Ct. No. 20-3815, ECF No. 37-38 (citation to the brief take the form "BlueScope Response Br. at __").

[3] The Issues and Decision Memorandum is available at P.R. 147 and cited herein as "IDM at __ (P.R. 147)." All citations to the administrative record take the form "P.R. __" or "C.R. __."

that is precisely what BlueScope did.  Despite this uncontroverted record evidence, Commerce failed to conduct an ***indirect*** reimbursement analysis consistent with its long-standing definition of "reimbursement" under its regulations.  Plaintiffs challenge two errors in the *Final Results*: (1)  the scope of Commerce's reimbursement regulation encompasses both direct and indirect reimbursement and insofar as Commerce failed to apply its regulation consistent with its established interpretation, Commerce's decision is not entitled to deference nor is in accordance with law; (2) in light of record evidence linking a deduction in invoice price to antidumping duties, Commerce's decision not to adjust for reimbursement was neither supported by substantial evidence nor did Commerce provide a reasoned path for deviating from its practice and rejecting U. S. Steel's allegation.

With respect to the first issue, Commerce responds that it acted in accordance with law because the language of the current regulation "does not indicate whether or not it applies to 'indirect' or 'direct' reimbursement."  USG Response Br. at 12.  While the regulation is indeed silent, Commerce has previously spoken and the interpretive guidance provided by Commerce's original regulations and past practice applying the regulation are outcome determinative and demonstrate why Commerce is wrong.  Both the 1980 regulations and more contemporary precedent establish Commerce's intent to adjust U.S. price for indirect reimbursement, defined as an exporter lowering the amount invoiced the importer for antidumping duties to be assessed. Commerce concedes that its regulation does not strictly apply to direct reimbursement only. USG Response Br. at 12 ("This does not mean that Commerce's regulation applies only to 'direct' reimbursement.").  And contrary to Commerce's argument (*see* USG Response Br. at 12-16), the Court's decision in *Torrington Co. v. United States* ("*Torrington*") actually supports making an adjustment for reimbursement where there is evidence of a direct link between a

PUBLIC VERSION

reduction to transfer value and antidumping duties.  *See* 881 F. Supp. 622, 632 (Ct. Int'l Trade 1995).  In fact, Commerce has been unable to cite any contradictory precedent to establish a reversal of Commerce's long-standing practice to correct for indirect reimbursement.

On the second issue, both Commerce and BlueScope concede that BlueScope's producer / exporter lowered the price invoiced to its importer by exactly the amount of antidumping duties that would be posted by the importer.  *See* USG Response Br. at 5 ("Under its pricing methodology, AIS calculates BSA's transfer price by, among other things, deducting an amount for estimated antidumping duties from the price calculated to estimate entry value."); *see also* USG Response Br. at 3; BlueScope Response Br. at 7 & 18.  Rather than confront the record evidence relevant to a finding of indirect reimbursement, *i.e.*, the actions between BlueScope Steel (AIS) Pty Ltd. ("AIS") and BlueScope Steel Americas Inc. ("BSA"), Commerce and BlueScope focus on irrelevant post-importation actions.  Commerce falls back on the argument that "if BSA, receiving the goods in the United States, pays duties owed upon receipt — as BlueScope certified it did — then, logically, AIS would not also invoice BSA for those duties."  USG Response Br. at 10.  Commerce dismisses this transaction as "logical" by overlooking the entirety of the transaction.  The terms of the sale in the United States are delivered duty paid ("DDP").  *See* USG Response Br. at 10; BlueScope Response Br. at 7.  Because subject merchandise is sold DDP in the United States, by deducting the antidumping duties on the front-end, BlueScope is undervaluing the subject merchandise such that the antidumping duties assessed by U.S. Customs and Border Protection ("Customs") upon entry do

PUBLIC VERSION

not amount to an increase in price.[4]  Therefore, what may seem "logical" in fact, does not comport with the law or the record.

For the reasons discussed herein, Plaintiffs respectfully request that the Court enter judgment for U. S. Steel and remand the matter to Commerce.

## I.   <u>ARGUMENT</u>

Commerce defines indirect reimbursement as an exporter lowering the price invoiced to the importer for antidumping duties.  *See* 19 C.F.R. § 351.402(f); *AFBs*, IDM at Section 13, Comment 1.  No party disputes this definition, or Commerce's authority to remedy indirect reimbursement under its regulation.  The parties admit that AIS lowered the price invoiced to BSA **<u>for antidumping duties</u>**, as Commerce and BlueScope readily concede in their briefs:

- BlueScope "calculates its transfer price to BSA by deducting estimated antidumping duties and freight from the Steelscape price."  USG Response Br. at 3.

- "Under its pricing methodology, AIS calculates BSA's transfer price by, among other things, deducting an amount for estimated antidumping duties from the price calculated to estimate entry value."  USG Response Br. at 5.

- "As Plaintiffs themselves note, Commerce's Final Analysis Memorandum shows that 'BlueScope deducted estimated antidumping duties and freight from that price to arrive at entered value."  BlueScope Response Br. at 18.

- "Commerce found that AIS deducted the duties BSA paid to reach the entered value of the merchandise, and that the invoice price to BSA did not include dumping duties."  BlueScope Response Br. at 18.

---

[4] A substantial portion of BlueScope's Response Brief was dedicated to establishing that "Steelscape was not charged AD duties."  BlueScope Response Br. at 10-15.  While this directly contradicts Commerce's position that "Steelscape, the final affiliated customer pays to BSA a duty-inclusive price" (USG Response Br. at 4) and BlueScope's own description of the transaction as being one in which "the duties and freight costs would be included in the price charged to the 'customer,' which in this case is Steelscape" (BlueScope Response Br. at 7), U. S. Steel did not raise an issue on appeal concerning BSA's transaction with Steelscape and as such is not addressing these arguments.  These arguments are irrelevant to the issues presented.

Accordingly, Commerce's failure to adjust for indirect reimbursement in the underlying review was not in accordance with law nor supported by substantial evidence.

### A. Commerce's Long-Standing Rule to Combat Indirect Reimbursement Has Been Unwavering and the Facts Here Support Its Application

Given the uncontroverted facts, the parties argue that the regulatory purpose has somehow changed without a single citation to rulemaking, administrative policy document, or case practice to evidence such a regulatory change. Yet, forty years of practice and Commerce's response brief establish that Commerce intends to correct for indirect reimbursement caused by an exporter lowering the amount invoiced to the importer for antidumping duties to be assessed. *See* USG Response Br. at 12. The parties also advance a rule irrelevant to this proceeding that below-cost transfer prices do not establish reimbursement. Rather, what is relevant is the direct link between the transfer price and the deduction of duties. *See* USG Response Br. at 3 and 5 and BlueScope Response Br. at 7 & 18. Finally, Commerce attempts to paint Plaintiffs' argument as too broad, USG Response Br. at 16, but ignores the very narrow application of the regulation to the facts at issue here — where a producer/exporter reduces the transfer price specifically for antidumping duties owed.

### 1. Commerce's Regulatory Changes Since 1980 Do Not Establish an Intent to No Longer Correct For Indirect Reimbursement

Commerce suggests that because the "expansive language" of the original regulation was amended in favor of the more streamlined current version, Commerce's intent (*i.e.*, adjusting U.S. price for any antidumping duties which are "either directly or indirectly reimbursed" *Antidumping Duties*, 45 Fed. Reg. 8182, 8206 (Feb. 6, 1980) ("*Original Rules*")) was not carried forward. *See* USG Response Br. at 5-6. Not only does Commerce contradict itself later by conceding that Commerce's regulation does not apply "only to 'direct' reimbursement" (USG Response Br. at 12) but Commerce's own definition of reimbursement provided nearly in

PUBLIC VERSION

parallel with the amendment directly undermines these *post hoc* characterizations (*see AFBs*, IDM at Section 13, Comment 1).

Commerce accuses Plaintiffs of "offer{ing} no authority to suggest that Commerce is bound by the language and interpretation of a former regulation even if that regulation has since been amended." USG Response Br. at 13. But Commerce backtracks to acknowledge that plaintiffs cite to authority demonstrating Commerce's consistent interpretation of its reimbursement regulation. And then Commerce concludes, without a scintilla of administrative rulemaking or caselaw, to claim that there is "no authority for the assertion that this single IDM *must* be interpreted as a binding expression of Commerce's contemporaneous intent." USG Response Br. at 14 (emphasis in original).

As an initial matter, Commerce's response is not owed deference as it is not an agency decision and is offered only in a response brief. *See Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 213 (1988) ("Deference to what appears to be nothing more than an agency's convenient litigating position would be entirely inappropriate."); *Abbott Labs. v. United States*, 573 F.3d 1327, 1332–33 (Fed. Cir. 2009) ("{W}e owe deference only to those considered agency judgments as to the issue directly involved in the litigation, not to the views of litigation counsel."). Plaintiffs cited this administrative practice in their case brief and if Commerce intended to espouse such an abrupt reversal of long-standing practice, it could have, but it did not. *See* "Petitioners' Case Brief," dated March 11, 2020 at 4-9 (P.R. 132, C.R. 308); IDM at 6 (P.R. 147). In any event, Commerce is wrong to jettison the language of its original regulations and the definition proffered by *AFBs*. In point of fact, Commerce continued to acknowledge the need to correct for indirect reimbursement in 2000, well past when its regulations were amended: "the language of the certification requirement does not exclude indirect reimbursements of the

PUBLIC VERSION

importer by the exporter or producer." *Porcelain-on-Steel Cookware from Mexico: Final Results of Antidumping Duty Administrative Review*, 65 Fed. Reg. 30,068 (May 10, 2000) and accompanying Issues and Decision Memorandum at Cmt. 1.

Commerce ignores *Porcelain-on-Steel Cookware from Mexico* and otherwise attempts to undermine the relevance of *AFBs* claiming the twenty-five year precedent issued contemporaneous with the original regulation is just too old. *See* USG Response Br. at 14 ("Commerce's determination in a single review nearly twenty-five years ago is neither binding on Commerce nor evidence of Commerce's standard practice."). Despite being incorrect as a matter of case precedent, legal doctrine does not have an expiration date nor is the number of decisions a determinative factor in their relevance or authority. Rather, the applicable legal framework is whether Commerce has expressly rejected the practice under consideration. *See NMB Sing. Ltd v. United States*, 557 F.3d 1316, 1329 (Fed. Cir. 2009) ("No party cites any case in which Commerce has rejected the idea . . . ."). Once Commerce has adopted a policy or practice, it "is obliged to follow it until Commerce provides a sufficient, reasoned analysis explaining why a change is necessary." *NMB Sing. Ltd*, 557 F.3d at 1328 (citing *Br. Steel PLC v. United States*, 127 F.3d 1471, 1475 (Fed. Cir. 1997); *Save Domestic Oil, Inc. v. United States*, 357 F.3d 1278, 1283-84 (Fed. Cir. 2004) ("{I}f Commerce has a routine practice for addressing like situations, it must either apply that practice or provide a reasonable explanation as to why it departs therefrom.")).

Despite Commerce's attempt to leverage this Court's decision in *Shandong Huarong Mach. Co. v. United States* against Plaintiffs' position, the Court's findings are in fact complementary. USG Response Br. at 14. There the Court held that "two prior determinations are not enough to constitute agency practice that is binding on Commerce" when conflicting

precedent existed that was more akin to the facts of that record. *See Shandong Huarong Mach.*

*Co. v. United States*, 435 F. Supp. 2d 1261, 1293 (Ct. Int'l Trade 2006) ("the court finds that

Commerce correctly determined that the situation presented here is distinct from that in those

past investigations."); *id*. at 1293 n.23 (citing *Ranchers-Cattlemen Action Legal Foundation v.*

*United States*, 74 F. Supp. 2d 1353, 1374 (Ct. Int'l Trade 1999) ("An action . . . becomes an

'agency practice' when a uniform and established procedure exists that would lead a party, in the

absence of notification of change, reasonably to expect adherence to the established practice or

procedure.")).  Unlike in *Shandong Huarong*, defendant and defendant-intervenors have been

unable to cite conflicting case precedent.  Here, there is no practice cited to demonstrate a shift in

Commerce's interpretation of the reimbursement regulation.

 In an attempt to construct case practice where there is none, and without regard to the

relevant facts, BlueScope broadly asserts that because Commerce has denied reimbursement

allegations in ten previous cases, it was justified doing so here.  BlueScope Response Br. at 16.

None of the cited cases present a similar situation as that at issue here.[5]  Indeed, none establish a

---

[5] The cases BlueScope cites have no bearing on whether the reimbursement regulation is applicable to the facts of this record:

"*Welded Line Pipe from the Republic of Korea: Final Results of Antidumping Duty Administrative Review; 2015-2016*, 83 Fed. Reg. 33,919 (July 18, 2018) (Final Results), and accompanying Issues and Decision Memorandum at Cmt. 13" BlueScope Response Br. at 16 n.1. Commerce dismissed SeAH's arguments concerning a CEP offset as moot because it already found SeAH's sales to Canada not to constitute a viable comparison market.  Comment 5 of the same decision discusses an allegation of reimbursement based solely on the use of "loans provided by banks directed by the GOK."  Commerce declined to find that the potential funding of respondents' sales of subject merchandise in the United States by loans from GOK owned banks constituted reimbursement.

"*Certain Frozen Warmwater Shrimp From the People's Republic of China: Final Results of Administrative Review; 2011-2012*, 78 Fed. Reg. 56,209 (Sept. 12, 2013) and accompany Issues and Decision Memorandum at Cmt. 7" BlueScope Response Br. at 16 n.1.  Comment 7 discusses "Hilltop as Part of PRC-Wide Entity."  Reimbursement is only referenced by the boilerplate language reminding the importer to file its non-reimbursement certification.

PUBLIC VERSION

change in Commerce's interpretation of reimbursement to combat indirect reimbursement but rather reject Commerce's *post hoc* thesis.  Specifically, BlueScope cites *Porcelain-on-Steel Cookware from Mexico* in which Commerce unambiguously states, "the language of the certification requirement does not exclude indirect reimbursements of the importer by the exporter or producer."  *See* BlueScope Response Br. at 16 n.1; *Porcelain-on-Steel Cookware from Mexico: Final Results of Antidumping Duty Administrative Review*, 65 Fed. Reg. 30,068 (May 10, 2000) and accompanying Issues and Decision Memorandum at Cmt. 1.  Not only does this undermine Commerce's attempts to rationalize its decision based on BSA's certification (*see* USG Response Br. at 4, 5, 7, & 10) but in 2000 — several years after Commerce's

---

"*Solid Urea from the Russian Federation: Final Results of Antidumping Duty Administrative Review*, 75 Fed. Reg. 51,440 (Aug. 20, 2010) and accompanying Issues and Decision Memorandum at Cmt. 1" BlueScope Response Br. at 16 n.1.  Commerce rejected petitioner's argument that "when an importer does not file a certification of nonreimbursement with CBP, the Department may presume that the exporter or producer reimbursed the antidumping duties."

"*Certain Frozen Fish Fillets From the Socialist Republic of Vietnam: Final Results of the Second Administrative Review*, 72 Fed. Reg. 13,242 (Mar. 12, 2007) and accompanying Issues and Decision Memorandum at Cmt. 4"  BlueScope Response Br. at 16 n.1.  Comment 4 discusses Commerce's decision to make a finding of reimbursement based on adverse facts available because the respondent refused to participate in the review.  Commerce rejected a separate claim of reimbursement based solely on an allegation of a below cost transfer price.

"*Structural Steel Beams From the Republic of Korea; Final Results of Antidumping Duty Administrative Review*, 68 Fed. Reg. 2,499 (Jan. 17, 2003) and accompanying Issues and Decision Memorandum at Cmt. 2" BlueScope Response Br. at 16 n.1.  Commerce declined to find the reimbursement allegation reasoning "that when the importer and exporter are the same entity, the reimbursement rule does not apply."

"*Stainless Steel Sheet and Strip From Taiwan; Final Results and Partial Rescission of Antidumping Duty Administrative Review*, 67 Fed. Reg. 6,682 (Feb. 13, 2002) and accompanying Issues and Decision Memorandum at Cmt. 27" BlueScope Response Br. at 16 n.1.  Commerce declined to find reimbursement because it was unsupported beyond "affiliation alone."

"*Certain Cut-to-Length Carbon Steel Plate from Sweden: Final Results of Antidumping Duty Administrative Review*, 62 Fed. Reg. 18,396, 18,403 (Apr. 15, 1997)" BlueScope Response Br. at 16 n.1.  At 18,403 Commerce denies petitioners' request to consider a duty absorption inquiry outside of the second and fourth administrative reviews.  Commerce's decision also contains boiler plate language reminding importers to file a reimbursement certificate.

reimbursement regulation was amended — Commerce yet again expressed its continued intent to correct for indirect reimbursement.  Even more recently, in 2005, Commerce reinforced its intent to adjust for indirect reimbursement as defined in *AFBs* in *Honey from the People's Republic of China* — cited by BlueScope — Commerce declared the calculation of a transfer price net of dumping duties "is troubling."  *See* BlueScope Response Br. at 16 n.1; *Honey from the People's Republic of China: Final Results and Final Rescission, In Part, of Antidumping Duty Administrative Review*, 70 Fed. Reg. 38,873 (July 6, 2005) and accompanying Issues and Decision Memorandum at Cmt. 10.  Commerce, however, was not compelled to make a reimbursement adjustment because it corrected for the indirect reimbursement by "revising its cash deposit collection methodologies to avoid an artificial lowering of the transfer prices."  *Id*.

Neither Commerce nor BlueScope cite to any rulemaking, policy decision, or case precedent to establish that Commerce altered its long-held belief that reimbursement must be corrected whether direct or indirect and both types of reimbursement substantially undermine the remedial purpose of the antidumping laws.

### 2. Reimbursement in BlueScope's Case Is Not Based on a Below-Cost Transfer Price, But Evidence of a Direct Link to Duty Rates

Commerce argues that "'{e}vidence of below-cost transfer pricing between related parties is not in itself evidence of reimbursement of antidumping duties.'"  USG Response Br. at 8.  Plaintiffs might agree.  But such a policy is irrelevant to this appeal.  This appeal is about a dollar-for-dollar reduction in the invoice price to the importer to account for the antidumping duties the importer will pay.  Commerce attempts to rely on *Torrington* by claiming the court approved a pricing framework where the exporter calculated the importer's transfer price "by, among other things, ***deducting an amount for estimated antidumping duties*** from the price calculated to estimate entry value."  USG Response Br. at 5.  *Torrington* made no such finding.

The reimbursement allegation subject to appeal in *Torrington* was premised on the contention that "whenever a foreign manufacturer sells merchandise to a related U.S. importer at prices below cost plus profit or, alternatively, below cost, the transaction should be regarded as a transfer of funds to the extent that prices are less than the benchmark." *Torrington*, 881 F. Supp at 629. In sustaining Commerce's conclusion that Torrington's allegation did not rise to the level of reimbursement the Court concluded, "{i}n light of Torrington's failure to produce any evidence showing a link between intracorporate transfers and the reimbursement of antidumping duties, this Court finds Commerce properly decided not to make a deduction to USP for antidumping duty reimbursement." *Torrington*, 881 F. Supp at 632. Stated differently, *Torrington* establishes that a link between the lowered price and antidumping duties is the key to evidencing reimbursement and thus triggering an adjustment, which is precisely what BlueScope did here.

That the Court in *Torrington* distinguished a below cost transfer pricing scheme from one linked to the explicit deduction for estimated antidumping duties renders it very much a distinction with a difference and distinguishes *Torrington* from the case at bar. *See* USG Response Br. at 16. Here, the allegation of indirect reimbursement is based on demonstrated record evidence linking the lowering of the price invoiced to BSA, the importer, by the exact amount of the antidumping duties. *See* Memorandum of Points of Law and Fact in Support of the Rule 56.2 Motion for Judgement on the Agency Record Filed by Plaintiffs, Ct. No. 20-3815, ECF No. 33 at 11; United States Steel Corporation, Statement of the Issues, Ct. No. 20-3815, ECF No. 31; United States Steel Corporation, Complaint, Ct. No. 20-3815, ECF No. 6. Commerce and BlueScope have both unequivocally conceded that AIS lowered the price invoiced to BSA for antidumping duties specifically. *Supra* Section I. Given such uncontested

11

PUBLIC VERSION

facts directly linking the reduction of the transfer price to the duty liability, *Torrington* supports Plaintiffs' claims of legal error.

### 3.   Plaintiffs Do Not Advocate a Broad Reading of the Regulation; Rather, Plaintiffs Advocate that the Regulation Should be Used as Intended

Plaintiffs requested that Commerce apply its reimbursement regulation to the record of this review consistent with its long-standing interpretation.  In 1980, Commerce ensured its rules provided an adjustment for "the amount of any antidumping duties which are, or will be, paid by the manufacturer, producer, seller, or exporter, either directly or indirectly . . . ."  *Original Rules*, 45 Fed. Reg. at 8,206.  Though the language of the reimbursement regulation has been streamlined over the years, Commerce's foundational principal of accounting for both direct and indirect reimbursement has endured.  In 1997, directly after adopting the current regulatory language, Commerce unequivocally defined reimbursement under 19 C.F.R. § 351.402(f) to include an "exporter lower{ing} the amount invoiced to the importer . . . for antidumping duties to be assessed."  *AFBs*, IDM at Section 13, Comment 1 (emphasis supplied).  *See also Antidumping Duties; Countervailing Duties; Final Rule*, 62 Fed. Reg. 27,296, 27,354-55 (May 19, 1997) ("*Preamble*").  In fact, Commerce concedes that Commerce's current regulation provides for the correction of both direct and indirect reimbursement.  *See* USG Response Br. at 12 ("This does not mean that Commerce's regulation applies only to 'direct' reimbursement.").

Defendant declares, "plaintiffs suggest a regulatory framework under which an exporter could avoid scrutiny under the reimbursement regulation by reducing an importer's transfer price by an amount greater than that calculated for estimated antidumping duties."  USG Response Br. at 16.  Commerce is incorrect insofar as it accuses Plaintiffs of broadening the meaning of indirect reimbursement to apply to any reduction in transfer price for any reason.  To the contrary, Plaintiffs' argument is narrowly tailored to situations, such as this one, where a

12

deduction to the importer's invoice price is directly linked to the amount of antidumping duties

to be assessed — no more, no less.  Here, not only do defendant and defendant-intervenors

concede a direct link between the deduction in invoice price and the antidumping duties (*supra*

Section I) but evidence on the record clearly shows a link between the preemptive lowering of

the amount invoiced to the importer and the antidumping duties to be assessed.  *See* BlueScope's

Supp. A at Exhibit SA-12 ([

]) (P.R. 61-62, C.R. 105-134).

### B. Post-Importation Activities Have Nothing to Do With Whether Indirect Reimbursement Occurred at the Time of Importation

Nothing that happens after the foreign producer lowers the price invoiced to the importer

explicitly to account for antidumping duties can reverse that indirect reimbursement.  The

indirect reimbursement is provided at that point of time to the importer and nothing that occurs

post-importation negates the indirect reimbursement.  Despite BSA being the importer, and

legally responsible for payment of the antidumping duties, AIS's deduction of those duties on the

front-end ensures that BSA incurs no actual cost or economic impact from the antidumping

duties upon importation.  Stated differently, the eventual payment of the duties to Customs does

not constitute a cost to the importer because AIS does not invoice BSA a nickel of the

duties.  Rather it deducts them from what is purportedly a delivered duty paid

price.  Consequently, the price paid by Steelscape to BSA is a delivered duty paid price (*See*

BlueScope Response Br. at 7) whereas the price paid by BSA to AIS is an FOB price (*See*

BlueScope Response Br. at 19).  That delta is created by an act of the foreign producer and is a

funding mechanism that creates indirect reimbursement.  AIS's reduction of the invoice price to

BSA reduces the total *ad valorem* duties owed such that BSA pays the same total outlay as if

these imports were not subject to antidumping disciplines (*i.e.*, paying less to AIS and less to Customs). AIS incurred the economic cost of the duty, not BSA.

Commerce attempts to overwrite this economic reality by citing the existence of a boiler plate certification as dispositive evidence that BlueScope did not indirectly reimburse its importer for antidumping duties. *See* USG Response Br. at 8 & 10. Contrary to Commerce's contention that BSA "rebutted that presumption by certifying that it was not reimbursed for payment of antidumping duties" USG Response Br. at 8, "the language of the certification requirement does not exclude indirect reimbursements of the importer by the exporter or producer." *Porcelain-on-Steel Cookware from Mexico*, 65 Fed. Reg. 30,068, IDM at Comment 1. The reimbursement certification is merely a standard administrative filing triggered by the import of any product subject to antidumping or countervailing duty orders and has no bearing on the merits of a reimbursement allegation when record evidence establishes indirect reimbursement. Commerce must investigate and not just rely on blanket certifications for non-reimbursement.

Commerce attributed undue significance to Steelscape's role in the transaction (*i.e.*, the downstream customer of the imported hot-rolled steel). In its brief, Commerce acknowledges that the price charged by the producer to the importer is reached "by deducting estimated antidumping duties from a downstream customer's price." USG Response Br. at 14-15. Commerce's summary of the transaction identifies BlueScope's indirect reimbursement. As Commerce concedes, the duties are included in the downstream customer's price. But rather than comporting with Customs practice and *declaring* a duty neutral price — thereby avoiding double payment of duties — BlueScope instead *deducted* the duties from the price invoiced to the importer. That BlueScope backed out duties from a DDP downstream price highlights the

indirect reimbursement conferred between AIS and BSA.  Moreover, this deduction is not a

below-cost transfer price, as Commerce characterizes it, which is simply a red herring.

Commerce, restating its conclusion, asserts, "as a factual matter – BSA, a United States

importer, actually paid antidumping duties and passed the price of those duties onto Steelscape."

USG Response Br. at 17.  Plaintiffs do not argue that BSA did not pay duties upon entry of the

subject merchandise.  Whether BSA paid antidumping duties and passed the price of those duties

onto Steelscape would be relevant to an allegation of direct reimbursement.  *See* USG Response

Br. at 11 ("the factual basis of Commerce's finding – evidence that BSA paid antidumping duties

and did not receive payment as reimbursement for antidumping duties.").  But here, Plaintiffs'

allegation is one of ***indirect*** reimbursement and as such the relevant question is whether the

exporter lowered the price invoiced the importer for antidumping duties.  Undervaluing the

invoice price to the importer constitutes indirect reimbursement because by paying less to the

producer / exporter, the importer's subsequent payment of duties results in a total outlay of

money for the good no different than if there were no dumping duties in place.

BlueScope alleges that "{s}ince BSA paid the duties on the entered value, the invoice

price paid to AIS had to be net of duties in order to be a true duty-paid price . . . and to avoid

BSA having to pay a duty on the duty."  BlueScope Response Br. at 14.  BlueScope is conflating

its reimbursement scheme — which ensures AIS incurs the economic cost of the duties — with

Customs practice that allows importers to deduct as non-dutiable charges duties ***included*** in the

transaction value on its Customs entry forms to arrive at the declared entered value.  Reporting

duties embedded in the price on the Form 7501 is the proper mechanism to ensure that an

importer does not pay "a duty on the duty" but that is not how BlueScope has structured the

**PUBLIC VERSION**

transaction.  Regardless, the reimbursement occurred prior to BSA's customs declaration.  AIS lowers its price to BSA by the amount of the antidumping duties.

## II.   <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully requests that this Court hold Commerce's *Final Results* are not in accordance with law.  Plaintiffs further request that this Court remand the agency's determination with instructions to Commerce to correct its errors and provide such other relief as this Court deems appropriate.

Respectfully submitted,

/s/ Alan H. Price                                        /s/ Sarah E. Shulman

Alan H. Price                                                Thomas M. Beline
Christopher B. Weld                                    Yohai Baisburd
                                                                    Sarah E. Shulman

*Counsel to Nucor Corporation*                 *Counsel to United States Steel Corporation*

Date:   July 13, 2021

PUBLIC VERSION

## Certificate of Compliance with Chambers Procedures 2(B)(1)

The undersigned hereby certifies that the forgoing submission of "Plaintiffs' Reply Brief in Support of the Rule 56.2 Motion for Judgment on the Agency Record" filed on July 13, 2021, contains 4,997 words, including footnotes, and excluding the table of contents, table of authorities, and signature block, and therefore, complies with the maximum 7,000 word count limitation set forth in rule 2(B)(1) of the Standard Chambers Procedures of the U.S. Court of International Trade.

BY: /s/ Sarah E. Shulman
Sarah E. Shulman