Slip Op. 22-57

UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| UNITED STATES STEEL CORPORATION, | : |
| Plaintiff, | : |
| and | : |
| NUCOR CORPORATION, | : |
| Plaintiff-Intervenor, | : Before: Richard K. Eaton, Judge |
| v. | : Court No. 20-03815 |
| UNITED STATES, | : **PUBLIC VERSION** |
| Defendant, | : |
| and | : |
| BLUESCOPE STEEL LTD., BLUESCOPE STEEL (AIS) PTY LTD., and BLUESCOPE STEEL AMERICAS, INC., | : |
| Defendant-Intervenors. | : |

**OPINION**

[Final Results are sustained.]

Dated: May 31, 2022

*Sarah E. Shulman*, Cassidy Levy Kent (USA) LLP, of Washington, D.C., argued for Plaintiff United States Steel Corp. With her on the brief were *Thomas M. Beline* and *Yohai Baisburd*. Also on the brief were *Alan H. Price*, *Christopher B. Weld*, and *Cynthia C. Galvez*, Wiley Rein LLP, of Washington, D.C., for Plaintiff-Intervenor Nucor Corp.

*Kelly A. Krystyniak*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., argued for Defendant the United States. With her on the brief were *Brian M. Boynton*, Acting Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Tara K. Hogan*, Assistant Director. Of counsel on the brief was *Spencer Neff*,

Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, D.C.

*Daniel L. Porter* and *Christopher A. Dunn*, Curtis, Mallet-Prevost, Colt & Mosle LLP, of Washington, D.C., argued for Defendant-Intervenors BlueScope Steel Ltd., BlueScope Steel (AIS) Pty Ltd., and BlueScope Steel Americas, Inc. With them on the brief was *James C. Beaty*.

Eaton, Judge: This case involves the final results of the U.S. Department of Commerce's ("Commerce" or the "Department") second administrative review of the antidumping duty order covering hot-rolled steel from Australia. *See Certain Hot-Rolled Steel Flat Prods. From Austl.*, 85 Fed. Reg. 63,249 (Dep't Commerce Oct. 7, 2020) ("Final Results") and accompanying Issues and Decision Mem. (Sept. 30, 2020), PR 147 ("Final IDM"). Domestic steel producers Plaintiff United States Steel Corporation and Plaintiff-Intervenor Nucor Corporation ("Plaintiffs") dispute certain aspects of the Final Results.

Before the court is Plaintiffs' motion for judgment upon the agency record. *See* Pls.' Mem. Supp. Mot. J. Agency R., ECF No. 32 ("Pls.' Br."); Pls.' Reply, ECF No. 39. By their motion, Plaintiffs challenge as unsupported by substantial evidence and otherwise not in accordance with law, the dumping margin that Commerce determined for the sole mandatory respondent in the review—a collapsed entity of affiliated steel companies in Australia owned by Defendant-Intervenor BlueScope Steel Ltd. In particular, Plaintiffs dispute Commerce's finding that the Department's "reimbursement regulation," in 19 C.F.R. § 351.402(f), did not apply. The regulation authorizes Commerce to deduct from U.S. price "the amount of any antidumping duty . . . which the exporter or producer . . . [r]eimbursed to the importer." 19 C.F.R. § 351.402(f)(1)(i)(B) (2019). Here, Plaintiffs fault Commerce's finding that there was no evidence that the respondent exporter had reimbursed its affiliated U.S. importer.

The United States ("Defendant"), on behalf of Commerce, and Defendant-Intervenors BlueScope Steel Ltd.; BlueScope Steel (AIS) Pty Ltd.; and BlueScope Steel Americas, Inc. ask the court to sustain Commerce's non-reimbursement finding and deny Plaintiffs' motion. *See* Def.'s Resp. Pls.' Mot. J. Agency R., ECF No. 36 ("Def.'s Br."); Def.-Ints.' Resp., ECF No. 37.

Jurisdiction is found under 28 U.S.C. § 1581(c) (2018) and 19 U.S.C. § 1516a(a)(2)(B)(iii) (2018).

Because Commerce's non-reimbursement finding is supported by substantial evidence and otherwise in accordance with law, Plaintiffs' motion is denied, and the Final Results are sustained.

## BACKGROUND

On December 11, 2018, Commerce initiated its second administrative review of the antidumping duty order on hot-rolled steel flat products from Australia. *See Initiation of Antidumping and Countervailing Duty Admin. Revs.*, 83 Fed. Reg. 63,615 (Dep't Commerce Dec. 11, 2018). The period of review was October 1, 2017, to September 30, 2018.

Commerce reviewed one mandatory respondent—a collapsed entity comprised of affiliated companies owned by Defendant-Intervenor BlueScope Steel Ltd. ("BlueScope").[1] *See* Final IDM at 1. BlueScope is the parent company, not only of the Australian exporter of the subject steel, Defendant-Intervenor BlueScope Steel (AIS) Pty Ltd. ("Exporter"), but also of the U.S. importer of that steel, Defendant-Intervenor BlueScope Steel Americas, Inc. ("Importer"), and the Importer's U.S. customer, Steelscape LLC. *See* BlueScope Steel Ltd.'s Resp. Sec. A Quest. (Feb. 11, 2019) at 12, PR 29-33, CR 1-10 ("BlueScope's Resp. Sec. A Quest.").

---

[1] The collapsed entity included three companies: the parent company BlueScope; Defendant-Intervenor BlueScope Steel (AIS) Pty Ltd.; and BlueScope Steel Distribution. BlueScope Steel Distribution is not a party in this action.

Relevant to this dispute is a series of back-to-back transactions made pursuant to the terms of a supply agreement among the affiliated companies: BlueScope, the Importer, and Steelscape. *See* BlueScope Steel Ltd.'s Resp. First Suppl. Sec. A Quest. (Apr. 8, 2019) Ex. SA-11, PR 61-62, CR 105-134 ("Supply Agreement"). Under the back-to-back scheme, the parent company BlueScope (through the Exporter) sold subject steel to the Importer, which in turn resold the steel to Steelscape. Steelscape then further manufactured the subject steel into non-subject merchandise and sold its products to an unaffiliated U.S. customer. *See* BlueScope's Resp. Sec. A Quest. at 17; *see also* Final IDM at 5-6.

In response to Commerce's questionnaires, BlueScope placed on the record a copy of the Supply Agreement, and explained the method by which it calculated transfer prices among its affiliates, *i.e.*, the price at which the Exporter sold the subject steel to the Importer, and the price at which the Importer sold the subject steel to Steelscape.[2] *See* Final IDM at 8. Commerce summarized the transfer price calculation method in a confidential memorandum.[3]

---

[2] The Supply Agreement identifies the price that the Importer charged Steelscape as a [[                                      ]], as this term is defined in the International Chamber of Commerce's 2010 Incoterms, *i.e.*, "[t]he seller [Importer] bears all the costs and risks involved in bringing the goods to the place of destination and has an obligation to clear the goods not only for export but also for import, to pay any duty for both export and import and to carry out all customs formalities." International Chamber of Commerce, https://iccwbo.org/resources-for-business/incoterms-rules/incoterms-rules-2010/ (last visited May 19, 2022); *see also* Supply Agreement at 4. The [[                              ]] thus, a duty-inclusive price determined based on a proprietary formula using data from published hot-rolled price indices. *See* Supply Agreement § 5.1 (stating the formula for the [[

]]).

[3] BlueScope's transfer price method is as follows:

[[

In accordance with the Supply Agreement, the price that the Exporter charged to the Importer was determined by deducting the estimated antidumping duties and freight from the price charged to Steelscape. *See* Final Analysis Mem. (Sept. 30, 2020) at 4, CR 310. To arrive at the Importer's transfer price, the Exporter started with the price paid by Steelscape, then the "[Exporter] calculate[d] [Importer's] transfer price by, among other things, deducting an amount for estimated antidumping duties" from the Steelscape price in order to estimate entry value. *See* Def.'s Br. at 5. The sales price to Steelscape thus included the antidumping duties that were paid by the Importer at the time the merchandise was entered.

Prior to liquidation of the subject steel entries, the Importer placed a certificate of non-reimbursement on the record, pursuant to 19 C.F.R. § 351.402(f)(2).[4] Commerce's regulations provide that if the importer fails to file a non-reimbursement certificate, Commerce "may presume from [such] failure . . . that the exporter or producer paid or reimbursed the antidumping duties." *Id.* § 351.402(f)(3).

Notwithstanding the Importer's non-reimbursement certificate, Plaintiffs claimed before Commerce,[5] and now argue before the court, that by "decreas[ing] the invoice price to the related

---

]]. In other words, [the Importer] paid the requisite dumping duties (an amount calculated using the [[ ]] price), and Steelscape was charged a duty-inclusive price.

Final Analysis Mem. (Sept. 30, 2020) at 4, CR 310.

    [4]    The Importer's certificate stated that the company had "not entered into any agreement or understanding for the payment or for the refunding to [it], by the manufacturer, producer, seller or exporter of all or any part of the antidumping duties assessed upon all shipments of" the subject steel during the period of review. *See* BlueScope's Resp. Sec. A Quest. Ex. A-8b.

    [5]    U.S. Steel alleged:

U.S. importer by the amount of the antidumping duties otherwise due," the Exporter reimbursed the Importer for antidumping duties. *See* Pls.' Br. at 1. Thus, for Plaintiffs, Commerce was required by the reimbursement regulation to lower U.S. price by the amount of estimated antidumping duties. *See* 19 C.F.R. § 351.402(f)(1)(i) ("In calculating the export price (or the constructed export price), the Secretary will deduct the amount of any antidumping duty . . . which the exporter or producer . . . [r]eimbursed to the importer.").

On December 17, 2019, Commerce published its Preliminary Results, in which it determined that the mandatory respondent—the collapsed entity BlueScope—dumped subject steel during the period of review. *See Certain Hot-Rolled Steel Flat Prods. From Austl.*, 84 Fed. Reg. 68,876 (Dep't Commerce Dec. 17, 2019) ("Preliminary Results") and accompanying Issues and Decision Mem. (Dec. 11, 2019), PR 114 ("PDM"); *see also* Prelim. Analysis Mem. (Dec. 10, 2019), PR 115, CR 258. In making its dumping calculation, Commerce declined to deduct from U.S. price any amount for the allegedly reimbursed antidumping duties under 19 C.F.R. § 351.402(f) because it preliminarily determined that there was no evidence on the record that the Exporter had reimbursed the Importer for such duties. *See* PDM at 12; *see also* Prelim. Analysis Mem. at 7.

In the Final Results, Commerce continued to determine that the evidence did not support a finding of reimbursement. *See* Final IDM at 7. Commerce based its determination on record

---

> BlueScope is reimbursing its affiliated importer the amount of the antidumping duty that would be assessed on the subject merchandise by improperly deducting the antidumping duty from the transfer price. As such, BlueScope's reported entered value is understated by the amount of the applicable duties on subject hot-rolled coils. In so far as BlueScope lowers the price of its hot-rolled steel by the amount of the duty, it is essentially paying the duty as a foreign producer.

U.S. Steel's Pre-Preliminary Cmts. Concerning BlueScope (Nov. 19, 2019) at 14, CR 256.

documents, including the non-reimbursement certificate filed by the Importer, pursuant to 19 C.F.R. § 351.402(f)(2); the Supply Agreement demonstrating the manner in which transfer prices among the BlueScope affiliates were determined; and evidence that the Importer had paid to U.S. Customs and Border Protection the antidumping duties that were owed on the subject imports. *See* Final IDM at 7-8.

In the Final IDM, Commerce addressed Plaintiffs' argument that reimbursement occurred when the Exporter lowered its transfer price to the Importer by the amount of estimated antidumping duties, stating, by way of explanation, that pricing alone is not probative of reimbursement in the context of transfers between affiliated companies, because the antidumping law treats affiliates as a single entity:

> The antidumping statute and regulations make no distinction in the calculation of [U.S. price] between costs incurred by a foreign parent company and those incurred by its U.S. subsidiary. Therefore, [Commerce] does not make adjustments to U.S. price based upon intracompany transfers of any kind.

Final IDM at 8 (citation omitted). In other words, to show reimbursement, more evidence is required than the lowering of the invoice price among affiliates—*i.e.*, some "evidence showing a link between intracorporate transfers and the reimbursement of antidumping duties." *Torrington Co. v. United States*, 19 CIT 403, 410, 881 F. Supp. 622, 632 (1995), *aff'd*, 127 F.3d 1077 (Fed. Cir. 1997). Here, Commerce found no such evidence on the record.

Moreover, Commerce did not find persuasive the evidence cited by Plaintiffs in support of their reimbursement claim, *i.e.*, invoice(s) that showed the Exporter, when calculating the transfer price charged to its related Importer, deducted the estimated antidumping duties that the Importer charged Steelscape. For Commerce, it would have been unreasonable for the Exporter to include antidumping duties in the price charged to the Importer because the Exporter itself was not responsible for those duties:

> In essence, the petitioners' argument appears to be that [the Exporter] should have charged [the Importer] the same price that [the Importer] itself charged Steelscape. However, that argument fails because [the Exporter] was not the importer of record (and thus, it would be unreasonable to require it to charge [the Importer] a price which is inclusive of [antidumping] duties which [the Exporter] did not incur).

Final IDM at 9 n.44. Here, Commerce found that the record showed the Importer "paid the [antidumping] duty deposits on each importation of subject merchandise during the [period of review], and it included those duties in the downstream price to its U.S. customer." Final IDM at 9. Commerce found that the record did not establish reimbursement and that, thus, its reimbursement regulation did not apply.

Commerce calculated an antidumping duty rate of 2.72 percent for the respondent BlueScope. *See* Final Results, 85 Fed. Reg. at 63,250.

Plaintiffs brought their objections to this Court, maintaining that Commerce misconstrued its reimbursement regulation by failing to recognize that "indirect" reimbursement (*i.e.*, the lowering of invoice price) had occurred here, and failed to support with substantial evidence its finding that the Exporter had not reimbursed the Importer for antidumping duties owed on the subject imports.

## STANDARD OF REVIEW

The court will sustain a determination by Commerce unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i).

## LEGAL FRAMEWORK

Commerce's determination of whether subject merchandise is being sold at less-than-fair value rests on a comparison of U.S. price (export[6] or constructed export price[7]) and the price at which the foreign like product is sold in the exporting country (normal value). *See* 19 U.S.C. §§ 1677a, 1677b. If subject merchandise is being sold at less-than-fair value, Commerce determines how much less, and then assesses antidumping duties to make up the difference. *Id.* § 1673; *see also id.* § 1677(35)(A) (defining dumping margin as "the amount by which the normal value exceeds the export price or constructed export price of the subject merchandise").

When determining U.S. price, the antidumping statute requires Commerce to make adjustments to the price under certain circumstances. *See id.* § 1677a(c), (d). Commerce has promulgated regulations that clarify how it makes these adjustments. *See* 19 C.F.R. § 351.402(a). Commerce's reimbursement regulation is one of them.

The reimbursement regulation provides that "[i]n calculating the export price (or the constructed export price), the Secretary will deduct the amount of any antidumping duty or countervailing duty which the exporter or producer: (A) Paid directly on behalf of the importer; or

---

[6] The "export price" is "the price at which the subject merchandise is first sold (or agreed to be sold) before the date of importation by the producer or exporter of the subject merchandise outside of the United States to an unaffiliated purchaser in the United States or to an unaffiliated purchaser for exportation to the United States, as adjusted under [§ 1677a(c)]." 19 U.S.C. § 1677a(a).

[7] The "constructed export price" is "the price at which the subject merchandise is first sold (or agreed to be sold) in the United States before or after the date of importation by or for the account of the producer or exporter of such merchandise or by a seller affiliated with the producer or exporter, to a purchaser not affiliated with the producer or exporter, as adjusted under [§ 1677a(c) and (d)]." 19 U.S.C. § 1677a(b). Here, all of BlueScope's U.S. sales were reported on a constructed export price basis, based on its U.S. affiliate Steelscape's sales to unaffiliated customers in the United States. *See* PDM at 10 ("BlueScope reported that its sales to the United States were all made on a [constructed export price] basis.").

(B) Reimbursed to the importer." 19 C.F.R. § 351.402(f)(1)(i)(A)-(B). The regulation requires that the importer file a non-reimbursement certificate prior to liquidation, failing which, Commerce may presume that the exporter reimbursed the importer for antidumping or countervailing duties:

> (2) *Certificate*. The importer must file prior to liquidation a certificate in the following form with the appropriate District Director of Customs:
>
> > I hereby certify that I (have) (have not) entered into any agreement or understanding for the payment or for the refunding to me, by the manufacturer, producer, seller, or exporter, of all or any part of the antidumping duties or countervailing duties assessed upon the following importations of (commodity) from (country): (List entry numbers) which have been purchased on or after (date of publication of antidumping notice suspending liquidation in the FEDERAL REGISTER) or purchased before (same date) but exported on or after (date of final determination of sales at less than fair value).
>
> (3) *Presumption*. The Secretary may presume from an importer's failure to file the certificate required in paragraph (f)(2) of this section that the exporter or producer paid or reimbursed the antidumping duties or countervailing duties.

*Id.* § 351.402(f)(2)-(3).

This Court has stated that the rationale for the reimbursement regulation is to preserve the remedy provided under the antidumping and countervailing duty laws. As explained in *Hoogovens Staal BV v. United States*, in the antidumping context:

> If the exporter assumes the cost of antidumping duties, an importer could continue to import at the lower, dumped price. U.S. producers would remain at a competitive disadvantage without the benefit of a viable remedy for the injury caused by the dumped imports. The regulation preserves the statutory remedy by accounting for the amount of duties reimbursed or paid by the exporter so that the final assessed duty will remedy the injury. Presumably, an exporter will be reluctant to continue paying the cost of antidumping duties because the margin will increase accordingly each time Commerce reviews it. Thus, the effect of the [antidumping duty] order on import prices will be preserved.

22 CIT 139, 141, 4 F. Supp. 2d 1213, 1217 (1998); *see also APEX Exps. v. United States*, 777 F.3d 1373, 1381 (Fed. Cir. 2015) (quoting *Ad Hoc Shrimp Trade Action Comm. v. United States*, 37 CIT 1166, 1176, 925 F. Supp. 2d 1367, 1375 (2013)) ("The reimbursement regulation at

§ 351.402(f) is designed to 'ensure that the . . . incentive for importers to buy at non-dumped prices is not negated by exporters who . . . remov[e] the importer's exposure to antidumping liability.'").

As to the application of the reimbursement regulation in the context of transactions among affiliated companies, it is not enough to show that intracorporate transfers occurred. There must be "evidence showing a link between intracorporate transfers and the reimbursement of antidumping duties." *See Torrington*, 19 CIT at 410, 881 F. Supp. at 632.

## DISCUSSION

The reimbursement regulation offers two scenarios for when Commerce will deduct the amount of any antidumping duty from U.S. price, *i.e.*, where an "exporter or producer" either (1) "Paid [the antidumping duties] directly on behalf of the importer," or (2) "Reimbursed [those duties] to the importer." 19 C.F.R. § 351.402(f)(1)(i)(A) & (B). Plaintiffs do not claim that reimbursement occurred under the first scenario. Indeed, Plaintiffs do not dispute Commerce's finding that the Importer itself paid the antidumping duties owed on its imports of subject steel directly, and included the antidumping duties in its downstream price to Steelscape. Rather, Plaintiffs claim that reimbursement occurred here under the second scenario, *i.e.*, they claim that the Exporter reimbursed the Importer for antidumping duties indirectly by "decreas[ing] the invoice price to the related U.S. importer by the amount of the antidumping duties otherwise due." Pls.' Br. at 1.

In support of their claim, Plaintiffs argue that Commerce's failure to deduct an amount for antidumping duties from U.S. price was inconsistent with its "practice" of considering the lowering of an invoice price to be "indirect reimbursement":

> Commerce concluded reimbursement had not taken place because duties were ultimately paid and [thus] declined to adjust [constructed export price] for

> reimbursement. Commerce ignored its long-standing interpretation of its regulation to find indirect reimbursement by lowering of the invoice price. Insofar as Commerce failed to follow its unambiguous regulation and practice, Commerce's decision is not entitled to deference. Commerce thus erred as a matter of law by failing to correct for reimbursement in its antidumping calculation.

Pls.' Br. at 11. As evidence of Commerce's practice, Plaintiffs cite the final results of a 1997 administrative review on antifriction bearings. *See Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From Fr., Ger., It., Japan, Rom., Sing., Swed. and the U.K.; Final Results of Antidumping Duty Admin. Revs.*, 62 Fed. Reg. 54,043 (Dep't Commerce Oct. 17, 1997) ("*AFBs*"). Specifically, Plaintiffs rely on the following statement from *AFBs*: "Although we agree [with petitioners] that the reimbursement regulation is applicable in [constructed export price] situations, there must be evidence that the parent has reimbursed (e.g., the exporter directly paid the duties for the importer *or the exporter lowered the amount invoiced to the importer*) its subsidiary for antidumping duties to be assessed." *AFBs*, 62 Fed. Reg. at 54,077 (emphasis added). Thus, for Plaintiffs, *AFBs* supports their claim that Commerce acted unlawfully.

Moreover, Plaintiffs maintain that Commerce has failed to explain adequately the reasons for its non-reimbursement finding. Specifically, Plaintiffs maintain that Commerce avoided squarely addressing their reimbursement allegation and focused its analysis instead on the Importer's payment of antidumping duties and the inclusion of those duties in the price to Steelscape. *See* Pls.' Br. at 24 ("Instead of addressing the deduction of antidumping duties from the price [Exporter] invoiced [Importer], Commerce repeatedly leapfrogged U.S. Steel's argument, focusing instead on subsequent parts of BlueScope's Channel 2 sales."). Thus, Plaintiffs question whether "Commerce [had] an evidentiary basis to support its conclusion that BlueScope was not reimbursing its importer for antidumping duties." Pls.' Br. at 3. Plaintiffs ask the court to remand Commerce's reimbursement finding and direct the agency to adjust its dumping calculation.

Defendant maintains that Commerce's decision not to adjust U.S. price is supported by the record, the law, and its prior practice. First, Commerce notes that the Importer "actually paid antidumping duties and passed the price of those duties onto Steelscape. Therefore, Steelscape's United States customers bore the impact of the antidumping duties, fulfilling the intent of those duties." Def.'s Br. at 17-18. For Defendant, the Exporter's lowering of the transfer price to the Importer did not circumvent the remedial purpose of the antidumping law: "[t]he fact that [the Exporter] lowered its transfer price to [the Importer] by the amount of estimated antidumping duties offers no relief to [the Importer] because the lowered transfer price will be accurately reflected in [the Exporter's] dumping margin." Def.'s Br. at 18. In other words, the lowered transfer price reflected the amount the Importer would pay at entry but does not lower the cost of the merchandise to reimburse the Importer for the duties.

Here, the transfers at issue are among affiliated parties. BlueScope is the parent of the affiliated companies that were involved in the back-to-back transactions that resulted in the importation and sale of subject steel into the United States. The record shows that the parent company BlueScope determined the price that the Exporter charged to the Importer by reference to the downstream, duty-inclusive transfer price charged to the Importer's U.S. customer Steelscape, pursuant to the terms of the Supply Agreement.[8]

---

[8]   As summarized by Commerce:

Using invoice [[          ]] as an example, BlueScope first calculated Steelscape's transfer price using the formula price of [two] steel indices ($[[      ]]/MT) and then it adjusted that base price according to product characteristics to arrive at $[[      ]]/MT. This base price, plus adjustments, is the price that [the Importer] charged Steelscape. Then, BlueScope [[

            ]]/MT. Finally, BlueScope [[
            ]]/MT, to arrive at the $[[          ]]/MT entered value, upon which [the Importer] paid its cash deposit of antidumping duties. Finally, BlueScope

The Exporter's deduction of estimated antidumping duties from the Importer's invoice price, on its own, is unremarkable when viewed in the context of the record. Together with the non-reimbursement evidence in the form of the certificate filed by the Importer, and evidence that the Importer paid duties owed on the subject steel, the court concludes it was not unreasonable for Commerce to find that the reimbursement regulation did not apply here.

First, it is important to understand just what happened here. Shorn of references to transfer pricing, tri-partite agreements, and Commerce's regulations, the facts show: a single entity took the final price paid by its last-in-line affiliate, deducted from that price an amount equal to the duties paid at the time of entry, and used the result as the basis for the price charged to the Importer. Thus, the entered price, as is universally the case, did not contain duties which were paid at entry by the Importer. The Importer (as an affiliate) paid the duties and added them to the price charged to the last-in-line affiliate purchaser. Plaintiffs have presented no evidence that the Exporter adjusted the price charged to the Importer in two ways: first, to make the price free of the duties that the Importer would pay at entry, and second, in an amount sufficient to reimburse the duties paid by the Importer at entry. Thus, Plaintiffs have failed to demonstrate that the actual payments and prices charged were anything other than those in a garden variety transaction among an exporter, an importer, and an unaffiliated purchaser. That the price paid was arrived at by means of a formula found in the Supply Agreement simply does not matter so long as the price paid for the merchandise by the Importer was not discounted to account for the duties.

---

calculated its transfer price to [the Importer] by [[ ]], resulting in a $[[ ]] transfer price to [the Importer].

Final Analysis Mem. at 4 (footnotes omitted).

Plaintiffs' claim that reimbursement occurred here rests on the alleged deduction of antidumping duties from invoices issued by Exporter to it affiliated Importer for the subject steel. In the Final Results, Commerce disagreed with Plaintiffs' interpretation of the evidence:

> We disagree . . . that record evidence establishes that [the Exporter] deducted [antidumping] duties when setting the price to [the Importer]. Rather, the information provided by BlueScope demonstrates that [the Importer] paid [antidumping] duties on its imports of subject merchandise, and it passed these duties on to Steelscape as part of the transfer price changed [sic] to it. Despite the petitioners' claim, this information does *not* show that [the Exporter] deducted [antidumping] duties from the price that it charged to [the Importer]; to the contrary, it simply shows the calculation of the transfer price to the U.S. customer, albeit an affiliated one.

Final IDM at 8 (footnote omitted). In other words, for Commerce, all the record evidence shows is the manner in which the transfer price between the affiliated Exporter and Importer was calculated. Plaintiffs failed to establish, with evidence, any link between that price and the alleged reimbursement of duties.

Plaintiffs' other arguments do not convince the court of any error of law or fact that would require remand. Plaintiffs' argument that Commerce unlawfully ignored its "practice" of considering the lowering of an invoice price to be "indirect reimbursement" under its regulations is meritless. Without citation to any authority, Plaintiffs argue that the intent of the 1980 version of the regulation, which covered antidumping duties that "are, or will be, refunded to the importer by the . . . exporter, either *directly or indirectly*" persists to this day. *See* 19 C.F.R. § 353.55(a) (1980) (emphasis added); *see also* Pls.' Br. at 14 ("Correcting for the reimbursement of 'any antidumping duties' that are '*either directly or indirectly*' paid by the manufacturer is a foundational principle of Commerce's trade remedy administration."). Plaintiffs appear to make this argument in an attempt to buttress their "legal" contention that "indirect" reimbursement, which is what they allege happened here, is covered by the current regulation.

As Plaintiffs know, however, since at least 1997, the language of the reimbursement regulation has changed. Unlike in 1980, today the regulation covers countervailing, as well as antidumping duties; the word "reimbursed" has replaced "refunded"; and "directly or indirectly," which modified "refunded," has been omitted altogether. *Compare* 19 C.F.R. § 353.55(a) (1980) *with* 19 C.F.R. § 351.402(f)(1)(i) (2019). In any event, here, it does not appear that Commerce interpreted the regulation in a way that would necessarily exclude what Plaintiffs have called "indirect reimbursement," *i.e.*, the lowering of an invoice price. Rather, Commerce based its determination on its finding that, in the context of transactions among affiliated companies, merely lowering the transfer price to account for the duties to be paid by the Importer, without more, does not amount to "reimbursement" under the regulation.

Regarding Plaintiffs' reliance on the 1997 decisional memorandum in *AFBs* as support for their contention that Commerce has a practice that it has ignored, the court is unconvinced. Plaintiffs apparently have cited *AFBs* for a single sentence, quoted in their brief, in which Commerce stated that "indirect" reimbursement was when "'the exporter lowered the amount invoiced to the importer' by the antidumping duties." *See* Pls.' Br. at 27 (quoting *AFBs*, 62 Fed. Reg. at 54,077). When read in context, however, the language Plaintiffs quote is less the announcement of agency practice than the citation of one example of circumstances that could lead to a finding of reimbursement, provided additional evidence of reimbursement was present on the record:

> Although we agree that the reimbursement regulation is applicable in [constructed export price] situations, there must be evidence that the parent has reimbursed (e.g., the exporter directly paid the duties for the importer or the exporter lowered the amount invoiced to the importer) its subsidiary for antidumping duties to be assessed. In [*Korean TVs*], we reaffirmed our original view that reimbursement, within the meaning of the regulation, takes place between affiliated parties if the evidence demonstrates that the exporter directly pays antidumping duties for the affiliated importer or reimburses the importer for such duties. In this case, there is

>   no evidence that any of the named respondents engaged in reimbursement activity with their respective affiliated U.S. subsidiary. Furthermore, Torrington has presented no evidence of inappropriate financial intermingling, an agreement to reimburse, or reimbursement in general. FAG, Koyo, and Nachi are correct in that the presence of both below-cost transfer prices and actual dumping margins do not, in and of themselves, constitute evidence that reimbursement is taking place. Therefore, consistent with our position in previous reviews of these orders, we reject Torrington's contention that below-cost transfer prices are tantamount to an indirect transfer of funds for reimbursement of antidumping duties and that we should make a deduction therefore in [constructed export price] transactions.

*AFBs*, 62 Fed. Reg. at 54,077 (citations omitted). Here, there is no evidence that the Importer was reimbursed for the duties it paid. Commerce's finding that the Exporter's deduction of estimated antidumping duties from its invoice to the Importer, without evidence that the price charged to the Importer was further lowered to reimburse the duties, fails to demonstrate reimbursement of the kind described in *AFBs*. Thus, the court is unconvinced by Plaintiffs' argument that Commerce has departed from an established practice that would require remand to permit the agency to explain or justify.

## CONCLUSION

For the foregoing reasons, the Final Results are sustained. Judgment shall be entered accordingly.

/s/ Richard K. Eaton<br>Judge

Dated: May 31, 2022
New York, New York